# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| MELISSA MARIE WARD, | No. 21-cv-4027-LTS |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

---

Melissa Marie Ward ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34 and for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 14) and only summarize the pertinent facts here. Claimant was born in 1971. (AR[1] at 169.) She has at least a high school education. (*Id*.). Claimant allegedly became disabled due to spinal fusion, neck pain, cardiovascular disease, COPD, GERD, melanoma screened yearly, bipolar disorder, depression, and anxiety. (*Id*. at 233.) Claimant's onset of

---

[1] "AR" cites refer to pages in the Administrative Record.

Case 5:21-cv-04027-LTS-MAR   Document 19   Filed 08/17/22   Page 1 of 26

disability date is February 17, 2015. (*Id*. at 152.) On May 9, 2019, Claimant filed her applications for DIB and SSI. (*Id*. at 211-12). Her claims were denied originally on July 25, 2019 (*id*. at 211-30) and were denied on reconsideration on February 7, 2020. (*Id*. at 231-52.) A teleconference hearing was held on July 22, 2020, with Claimant and her attorney Wil L. Forker and Administrative Law Judge ("ALJ") Chris Yokus. (*Id*. at 175-210.) Vocational Expert ("VE") Holly Neal also appeared at the hearing. (*Id*.) Claimant and the VE both testified. (*Id*. at 182-209.) The ALJ issued an unfavorable decision on September 11, 2020. (*Id*. at 152-70.)

Claimant requested review and the Appeals Council denied review on June 4, 2021. (*Id*. at 1-4.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On July 19, 2021, Claimant timely filed her Complaint in this Court. (Doc. 3.) On, April 1, 2022, all briefing was completed, and the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.   *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

2

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform

most jobs.  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. §§ 404.1521(b), 416.921(b).  These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience."  *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  RFC is the most an individual can do despite the combined effect of all his or her credible limitations.  *Id.* §§ 404.1545(a), 416.945(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014).  RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  If a

claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2), 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

A.    *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2021. (AR at 155.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her alleged onset date of February 17, 2015. (*Id.*)

At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: cervical spondylosis with history of fusion, coronary artery disease, anxiety, depression, bipolar disorder, and post-traumatic distress disorder ("PTSD"). (*Id.*) The ALJ also considered the effects of Claimant's COPD, dyslipidemia, annual melanoma screenings, and acute non-recurrent pansinusitis but found that these impairments did not cause any significant functional deficits and/or did not meet the durational requirements and, thus, were non-severe. (*Id.* at 155-57.) The ALJ also considered Claimant's obesity and determined that it "does not cause more than minimal limitation on the [C]laimant's ability to perform basic work-related activities and is therefore deemed to be non-severe." (*Id.* at 156.)

5

At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 157.) The ALJ evaluated Claimant's claims under listing 1.04 (disorders of the spine), 4.02 (chronic heart failure), and 4.04 (ischemic heart disease). (*Id.*) The ALJ also evaluated Claimant's mental impairments under listings 12.04 (affective disorders), 12.06 (anxiety disorders), 12.15 (trauma and stress-related disorders). (*Id.*) Additionally, the ALJ considered whether the paragraph B criteria were satisfied. (*Id.*) The ALJ noted that they did not meet or medically equal any of the criteria because he found that the Claimant has moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. (*Id.* at 157-58.) The ALJ concluded that the record did not show Claimant exhibited at least two "marked" limitations or one "extreme" limitation and thus, the "paragraph B" criteria were not satisfied. (*Id.* at 159.) The ALJ also considered whether the paragraph C criteria were satisfied. He found as follows:

> [T]he evidence fails to establish the presence of the "paragraph C" criteria. In this case, the [C]laimant has not shown any medical evidence of repeated episodes of decompensation. The [C]laimant has also not shown any evidence the disorders have resulted in such marginal adjustment that even a minimal increase in mental demands would cause decompensation. Finally, the [C]laimant's medical records do not show that the [C]laimant requires a highly supportive living arrangement in order to maintain even limited amounts of functioning. Therefore, the requirements of "paragraph C" are not satisfied.

(*Id.*)

At the fourth step, the ALJ determined that Claimant had the following RFC:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) but with additional limitations. She has no ability to climb ropes, ladders, or scaffolds. She

has the occasional ability to climb ramps and stairs and reach overhead with the right upper extremity. She has the frequent ability to stoop, crouch, and crawl. She is able to perform simple, repetitive, routine tasks and instructions (performing SVP 1 or 2 jobs). She can have no more than occasional contact with the general public and coworkers.

(*Id.*) Also at the fourth step, the ALJ determined that Claimant was unable to perform any of her past relevant work. (*Id.* at 168.)

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including marking clerk, routing clerk, and small products assembler. (*Id.* at 170.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.*)

## B.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . .   [T]he threshold for such evidentiary sufficiency is not high. . . .   It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it]

been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### III.   DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) rejecting Claimant's subjective allegations of disability and making an inadequate credibility finding; (B) rejecting the opinions of treating medical providers; and (C) making a flawed RFC determination and improperly relying on an incomplete hypothetical question to the VE. (Doc. 15.)

*A.*     ***Whether the ALJ Properly Evaluated Claimant's Subjective Allegations***

      *1.*     ***Parties' Arguments***

Claimant argues that the ALJ "erred in not making specific credibility findings regarding [Claimant's] testimony." (Doc. 15 at 6). Relying on *Baker v. Apfel*, 159 F.3d 1140 (8th Cir. 1998), Claimant suggests that the ALJ's credibility findings lacked reasons for discrediting her testimony, did not provide inconsistencies, and did not discuss the *Polaski* factors. (*Id.*) The Commissioner argues that the ALJ properly evaluated Claimant's subjective allegations of disability and his credibility findings should be affirmed. (Doc. 16 at 5-13.)

      *2.*     ***Relevant Law***

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the

objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### 3. *Analysis*

The record does not support Claimant's argument that the ALJ failed to provide good reasons for discounting Claimant's subjective complaints. The ALJ articulated his reasons for discounting Claimant's allegations at length considering the hearing testimony, Claimant's medical records, and doctors' medical opinions. (AR at 160-66.)

The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 160.) The ALJ thoroughly considered the intensity and severity of Claimant's symptoms in his discussion of Claimant's RFC. (*Id.* at 160-66.) In doing so the ALJ addressed the relevant *Polaski* factors and considered: (1) the Claimant's daily activities (*Id.* at 166); (2) the duration, frequency, and intensity of the condition (*id.* at 160-66);

(3) the use of medication (*id.* at 164, 166); (4) precipitating and aggravating factors (*id.* at 160-66); and (5) functional restrictions (*id.*). *See Wildman*, 596 F.3d at 968.

Specifically, with regard to Claimant's cervical spine impairment, the ALJ thoroughly reviewed and considered Claimant's medical history and treatment of her spine impairment. (AR at 160-62.) Based on her history, the ALJ found that Claimant's "neck fusion surgery would cause some physical limitations[.]" (*Id.* at 162.) The ALJ determined that:

> This condition would reasonably prevent [Claimant] from performing the lifting and carrying requirements of medium exertional work, and therefore, the residual functional capacity limits her to light exertional work. Additionally, the [C]laimant should perform no more than occasional overhead reaching with the right upper extremity; she is prevented from climbing ladders, ropes, or scaffolds. Such limitations are reasonable in order to prevent exacerbation of the residuals of the cervical spinal surgery and to protect the [C]laimant's safety. However, the [C]laimant['s] significant gap in treatment for the neck and upper extremities from approximately January 2017 to April 2020, and the otherwise conservative treatment after surgery, does not support the disabling symptoms and limitations alleged.

(*Id.*)

The ALJ also thoroughly reviewed and considered Claimant's medical history and treatment as it pertains to her cardiovascular impairment. (*Id.* at 162-64.) The ALJ found that Claimant's cardiovascular impairment provided further support that Claimant "should perform no more than the physical demands of light work." (*Id.* at 164.) However, the ALJ also determined that:

> [C]laimant's objective medical evidence regarding the cardiac condition, including the results of diagnostic testing, does not support a determination that additional limitations are necessary. Moreover, the [C]laimant has received conservative treatment for her cardiac condition with prescribed medication (Ex. 5F; 9F). There is no indication that this condition has

required the [C]laimant to seek emergent care or admission for inpatient treatment.

(*Id.*)

Further, the ALJ thoroughly reviewed and considered Claimant's medical history and treatment with regard to Claimant's mental impairments. (*Id.* at 164-66.) Specifically, the ALJ determined that:

> Overall, the medical evidence reasonably supports a finding of some moderate mental limitations due to the combination of her severe mental impairments. The [C]laimant[']s anxiety, depression, and PTSD and the resulting symptoms, would reasonably interfere with her ability to understand, remember, concentrate on, and persist at more complex and detailed work tasks. Accordingly, the residual functional capacity limits her to performing only simple, routine, and repetitive tasks and instructions. Furthermore, the [C]laimant's reports of agitation and irritability due to her mental impairments would result in some difficulty interacting with others appropriately on a consistent basis. The residual functional capacity therefore limits her to no more than occasional contract with the general public and coworkers.

> Additional limitations, however, such as the ones alleged by the [C]laimant, are not consistent with the evidence as a whole. For instance, they are not supported by the objective medical evidence, including the limited abnormalities observed by her primary care providers and by Dr. Larson at the consultative examination. Furthermore, the [C]laimant's conservative mental health treatment during the relevant period with medication prescribed by her primary care providers does not tend to suggest that additional mental limitations are necessary. . . . Furthermore, there is no indication that the [C]laimant's mental symptoms reached the severity that she required emergent mental health treatment or inpatient psychiatric care during the relevant period. Accordingly, while the evidence reasonably supports some moderate mental limitations, more extensive mental limitations, such as the ones alleged, are not consistent with the medical evidence of record.

(*Id.* at 166.)

12

Finally, the ALJ found that Claimant's description of daily activities was "inconsistent with her complaints of disabling symptoms and limitations." (*Id.*) The ALJ noted that Claimant could engage in a number of multi-step mental activities such as shopping online, managing money, preparing simple meals, and independently managing her personal hygiene. (*Id.*) The ALJ concluded that such evidence "further supports a finding that the [C]laimant remains capable of performing work involving the reduced range of light exertion[.]" (*Id.*) The ability to perform daily activities inconsistent with the claimant's alleged disability reflects negatively upon a claimant's credibility. *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) (citing *Johnson*, 240 F.3d at 1148). The ALJ properly used this inconsistency in his assessment of Claimant's credibility. Also, the ALJ properly considered Claimant's activities combined with his review of the medical evidence and medical opinions.

In sum, I find that the ALJ appropriately discounted Claimant's subjective allegations of disability because the ALJ found inconsistencies in the evidence as a whole and considered the *Polaski* factors. *See Wildman*, 596 F.3d at 968-69. As such, I find the ALJ did not err in discounting Claimant's testimony or her allegations because substantial evidence as a whole supported the ALJ's credibility determination. It is not for this Court to reweigh evidence. Thus, I recommend the District Court affirm this part of the ALJ's decision.

**B.**   ***Whether the ALJ Properly Evaluated Treating Medical Source Opinions***

   **1.**   ***Parties' Arguments***

Claimant generically argues that the ALJ "erred in rejecting the treating medical provider's [sic] findings." (Doc. 15 at 7.) Claimant then notes findings from Dr. Johnson and Dr. Bansal but offers no argument or explanation as to how these findings relate to the ALJ's decision. (*Id.*) Similarly, Claimant notes that her mental health diagnoses from Plains Area Mental Health Center are consistent with consultative

examiner Tony Larson, Psy.D., diagnoses but, again, she fails to argue or explain how these diagnoses relate to the ALJ's decision. (*Id.* at 8.) Finally, again, without argument or explanation, Claimant discusses some, but not all, findings from the Floyd Valley Clinics. (*Id.*) The Commissioner argues that the ALJ properly considered and addressed the medical opinion evidence in this case. (Doc. 16 at 14-17.)

### 2. *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Sections 404.1520c and 416.920c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

14

### 3. *Analysis*

On January 12, 2017, Dr. Johnson met with Claimant to perform an impairment rating for purposes of a workers' compensation claim.[2]  (AR at 574-75.)  Upon examination, Dr. Johnson determined for purposes of workers' compensation that Claimant had reached maximum medical improvement and had a 28% impairment to the whole person.  (*Id.* at 575.)  Dr. Johnson also noted that "[n]o permanent restrictions have been implemented."  (*Id.*)

Before addressing the ALJ's consideration and discussion of Dr. Johnson's opinions, I point out that, while the ALJ should consider Dr. Johnson's workers' compensation impairment rating, the ALJ "is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits." *Pelkey*, 433 F.3d at 579 (citing *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994)); *see also* 20 C.F.R. §§ 404.1504, 416.904 (providing, among other things, that a disability determination made by a nongovernmental agency for purposes of workers' compensation is not binding on the Social Security Administration).

In his decision the ALJ considered and addressed Dr. Johnson's opinions.  In considering Dr. Johnson's opinions, the ALJ noted that, after her January 2016 spine surgery, Claimant "had nearly complete resolution of numbness and tingling in the right arm, but still had some right arm pain (Ex. 3F)."  (AR at 161.)  The ALJ also noted that Dr. Johnson found "no evidence of ongoing nerve root impingement (Ex. 3F)" and determined that Claimant's right upper extremity "showed no gross muscle loss (Ex. 3F)."  (*Id.*)  Further, the ALJ noted that Dr. Johnson did find, however, a slight deficit on muscle strength testing on Claimant's right side.  (*Id.*)  The ALJ also pointed out that,

---

[2] On February 17, 2015, Claimant injured her neck and right upper extremity while lifting a 40-pound box overhead.  (AR at 574.)  She sought treatment in September 2015 and an MRI showed evidence of right paracentral disk herniation at C5-6.  (*Id.*)  On January 13, 2016, Claimant underwent an anterior cervical discectomy with fusion at C5-6. (*Id.*)

after meeting with Dr. Johnson, "the medical evidence reflects a significant gap in the [C]laimant's treatment related to her cervical spine or right arm conditions." (*Id.*) Specifically, the ALJ found that:

> For instance, the [C]laimant continued to treat with her primary care provider, Dr. Allison Schoenfelder, MD, who she saw approximately eight times from July 2017 through April 2019 (Ex. 4F). Dr. Schoenfelder's treatment notes do not reflect that the [C]laimant made significant, ongoing complaints regarding her neck or upper extremities, and Dr. Schoenfelder did not document abnormalities related to this condition, including limited range of motion of the neck or upper extremities, decreased sensation, or weakness (Ex. 4F).

(*Id.*) Further, the ALJ found that, when Claimant began treating with Dr. Cynthia Wolff, MD, for her primary care in October 2019 and continuing through March 2020, Claimant did not complain about her prior spinal fusion and Dr. Wolff did not note any abnormalities related to Claimant's spine condition. (*Id.* at 161-62.) In April 2020, Claimant complained, for the first time, to Dr. Wolff about neck pain. However, Dr. Wolff did not document any abnormalities upon examination and assessed Claimant with cervicalgia. (*Id.* at 162.)

In formulating Claimant's RFC, the ALJ took into consideration Claimant's neck fusion surgery and found that her condition would "reasonably prevent her from performing the lifting and carrying requirements of medium exertional work, and therefore, the residual functional capacity limits her to light exertional work." (*Id.*) The ALJ also limited Claimant to occasional overhead reaching with her right upper extremity and no climbing of ladders, ropes, or scaffolds. (*Id.*) The ALJ concluded that such limitations would "prevent exacerbation of the residuals of the cervical spinal surgery and . . . protect the [C]laimant's safety." (*Id.*)

Having reviewed the entire record, I find that the ALJ properly considered and weighed the opinion evidence provided by Dr. Johnson. It is evident from the ALJ's

decision that he considered Dr. Johnson's opinions as they relate to Claimant's spinal surgery, neck pain, and right upper extremity deficiencies. Indeed, the ALJ limited Claimant to light exertional work, including limiting her from climbing ladders, ropes, or scaffolds and limiting her to occasional overhead reaching with her right arm. (*Id.* at 159.) While the ALJ did not specifically address supportability and consistency as to Dr. Johnson's opinions, it is clear that the ALJ found Dr. Johnson's opinions supported and consistent with the record as a whole as they related to the limitations he placed on Claimant's ability to work. (*Id.* at 161-62.)

The ALJ's failure to specifically address the supportability and consistency of Dr. Johnson's opinions does not necessitate remand. First, in her brief, Claimant does not argue or explain how Dr. Johnson's opinions relate to the ALJ's decision and only recites Dr. Johnson's findings. Claimant points to no evidence in the record regarding the consistency or supportability of Dr. Johnson's findings. Second, in discussing Dr. Schoenfelder's findings and Dr. Wolff's findings, the ALJ implicitly finds that Dr. Johnson's findings are supported and consistent with the medical evidence as a whole. (*Id.* at 161-62.) Third, any error in not addressing the supportability and consistency of this opinion is harmless. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'") (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Fourth, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Welsh*, 765 F.3d at 929). Accordingly, for all the reasons stated above, I conclude that the ALJ properly evaluated Dr. Johnson's opinions.

Turning to Dr. Bansal's opinion, similar to Dr. Johnson's opinions, Dr. Bansal's opinion was offered with regard to Claimant's workers' compensation litigation and is

not binding on the ALJ.  *See* 20 C.F.R. §§ 404.1504, 416.904 (providing, among other things, that a disability determination made by a nongovernmental agency for purposes of worker's compensation is not binding on the Social Security Administration); *Pelkey*, 433 F.3d at 579.  Furthermore, Dr. Bansal is not a treating physician.  He performed a one-time physical examination of Claimant in 2017 for purposes of rendering his workers' compensation opinion.  Moreover, Dr. Bansal's opinion was not in the record before the ALJ, even though the ALJ left the record open after the hearing to allow Claimant to submit additional evidence, which she did, but not Dr. Bansal's opinion.  Claimant only submitted Dr. Bansal's opinion to the Appeals Council.  Claimant offers no explanation for why she did not submit Dr. Bansal's opinion to the ALJ, particularly when Dr. Bansal's opinion was rendered in 2017, long before the hearing.  *See Postel v. Saul*, No. 18-CV-2017-MAR, 2019 WL 4720990, at *27 (N.D. Iowa Sept. 29, 2019) ("Hearing representatives as experienced as the ones in this case could easily have filed this evidence prior to the hearing so as to have it available at the hearing[.]").

Additionally, the Appeals Council did not rely on Dr. Bansal's opinion because it did not "show a reasonable probability that it would change the outcome of the decision." (AR at 2.)  Indeed, even though Dr. Bansal opined that Claimant should be limited to lifting no more than 10 pounds and no overhead reaching, such an opinion is not supported by Dr. Bansal's own findings and is inconsistent with the record as a whole. In his examination, Dr. Bansal found full range of motion for Claimant's right shoulder and 4/5 strength for her upper right extremity.  (*Id.* at 15.)  Moreover, no other medical source has limited Claimant to lifting only 10 pounds.  Further, the ALJ limited Claimant to light work, which would involve lifting no more than 20 pounds and occasional reaching overhead with her right arm.  Finally, Claimant offers no argument or explanation for how Dr. Bansal's opinion relates to the ALJ's decision.  Thus, based on

all the foregoing, I conclude that Claimant's reliance to Dr. Bansal's opinions has no relevance or bearing on the ALJ's decision and does not necessitate remand.

With regard to Dr. Larson's opinions, in her brief, Claimant simply states that Dr. Larson's opinions are consistent with treatment notes from Plains Area Mental Health Center. (Doc. 15 at 7-8.) It is unclear how this consistency supports Claimant's argument that the ALJ improperly rejected treating medical findings. Claimant makes no argument for how the ALJ's consideration of Dr. Larson's opinions constitutes error. Perhaps this is the case because the ALJ did not err in his consideration of Dr. Larson's opinions and did not reject Dr. Larson's opinions. The ALJ determined that:

> Dr. Larson provided an opinion in connection with the psychological consultative examination (Ex. 6F). Dr. Larson stated, "[t]here may be limitations to [Claimant] working" (Ex 6F/3). He stated that symptoms of anxiety may make it difficult for her to be effective in the workplace, but that she should be able to understand instructions, procedures, and locations and have the ability to carry them out (Ex. 6F). Dr. Larson stated her history of panic attacks may be exacerbated in a high-stress working environment, but he also stated she would be able to use good judgment and respond appropriately to changes (Ex. 6F). He stated she would likely have problems leaving her home, but she should be able to interact appropriately with supervisors, coworkers, and the public (Ex. 6F). Dr. Larson stated the [C]laimant would be able to handle funds. Dr. Larson's opinion is generally consistent with a finding of no more than moderate mental limitations. His opinion is sufficiently accommodated by a limitation to simple, routine, repetitive tasks with some limitation in social interactions. Such opinion is supported by his own observations at the consultative examination. It is also consistent with the evidence as a whole, including the [C]laimant's overall conservative mental health treatment during the relevant period, the limited abnormal findings documented by her primary care providers, and some of her reported activities of daily living. Accordingly, this opinion is generally persuasive.

(AR at 167-68.) Having reviewed the entire record, I find that the ALJ properly considered and weighed the opinion evidence provided by Dr. Larson. The ALJ did not

err in finding Dr. Larson's opinion persuasive, as the ALJ based his finding on its supportability in Dr. Larson's own examination findings and its consistency with the record as a whole. Accordingly, I find Claimant's argument with regard to Dr. Larson's opinions is without merit.

Finally, in her brief, Claimant notes two findings related to her spine surgery and mental health impairments from her visits to the Floyd Valley Clinics. Claimant makes no argument and offers no explanation as to the relevance of these findings to the ALJ's decision. The findings referred to from Floyd Valley Clinics were made by Dr. Cynthia Wolff, MD, Claimant's primary care physician beginning in October 2019. The ALJ addressed Dr. Wolff's findings with regard to Claimant's spine surgery. (*Id.* at 806-10.) On April 30, 2020, Claimant complained to Dr. Wolff of neck pain and numbness and tingling on her right side into her hand and cramping on her left side. (*Id.* at 162.) Claimant reported that her complaints had been bothering her for several years and had not gotten better since her surgery. (*Id.*) However, the ALJ pointed out that Claimant "had not reported such complaints to her primary providers or followed up with orthopedic specialists in approximately three years" and "Dr. Wolff did not document abnormalities on examination (Ex. 10F)." (*Id.*) As discussed above, in formulating Claimant's RFC, the ALJ took into consideration Claimant's neck fusion surgery and found that her condition would limit her to light exertional work, occasional overhead reaching with her right upper extremity, and no climbing of ladders, ropes, or scaffolds. (*Id.*)

Similarly, the ALJ addressed Dr. Wolff's findings with regard to Claimant's mental impairments. In October 2019, Claimant complained, among other things, of anxiety, depression, and bipolar disorder. (*Id.* at 165, 743-47.) On subsequent visits

with Dr. Wolff, Claimant complained about irritability and depression.[3] (*Id.* at 165.) In considering Dr. Wolff's opinions and findings, the ALJ noted that Claimant's previous primary care physician "had not refilled medication due to missed appointments." (*Id.*) The ALJ also noted that Dr. Wolff "observed no psychiatric abnormalities, instead noting that the [C]laimant had normal mood and affect." (*Id.*) Dr. Wolff treated Claimant with medication. (*Id.*) In December 2019, Dr. Wolff adjusted Claimant's medication but found "no evidence of anxiety or depression." (*Id.*) In March and April 2020, "Dr. Wolff did not document significant psychiatric abnormalities" on examination of Claimant. (*Id.*)

In formulating Claimant's RFC, the ALJ took into consideration Claimant's mental impairments and determined that "the medical evidence reasonably supports a finding of some moderate mental limitations[.]" (*Id.*) The ALJ limited Claimant to performing only simple, routine, and repetitive tasks and occasional contact with the general public and coworkers. (*Id.* at 165-66.) The ALJ determined that additional limitations were not warranted due to inconsistencies with the evidence as a whole, including "limited abnormalities observed by her primary care providers and by Dr. Larson," conservative mental health treatment, and Claimant's lack of emergent treatment or psychiatric inpatient treatment during the relevant period. (*Id.* at 166.)

Having reviewed the entire record, I find that the ALJ properly considered and weighed the opinion evidence provided by Dr. Wolff. It is evident from the ALJ's decision that he considered Dr. Wolff's opinions as they relate to Claimant's spinal surgery, neck pain, and right upper extremity deficiencies and Claimant's mental health impairments. Indeed, the ALJ limited Claimant to light exertional work, no climbing ladders, ropes, or scaffolds and limiting her to only occasional overhead reaching with

---

[3] Except for the complaints in October 2019, Claimant did not address any subsequent complaints of mental health impairments with Dr. Wolff in her brief.

her right arm. (*Id.* at 159.) The ALJ also limited Claimant to performing only simple, routine, repetitive tasks and only occasional contact with the general public and coworkers. (*Id.*) While the ALJ did not specifically address supportability and consistency as to Dr. Wolff's opinion, it is clear that the ALJ found Dr. Wolff's opinions supported and consistent with the record as a whole with regard to the limitations he placed Claimant's ability to work. (*Id.* at 162, 165-66.)

The ALJ's failure to specifically address the supportability and consistency of Dr. Wolff's opinion does not necessitate remand. First, in her brief, Claimant does not argue or explain how Dr. Wolff's opinions relate to the ALJ's decision and only recites some, but not all, of Dr. Wolff's findings. Moreover, Claimant points to no evidence in the record regarding the consistency or supportability of Dr. Wolff's findings. Second, in discussing the other treating sources, the ALJ implicitly finds that Dr. Wolff's findings are supported and consistent with medical evidence as a whole. (*Id.* at 160-62, 164-66.) Third, any error in not addressing the supportability and consistency of this opinion is harmless. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'") (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Fourth, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Welsh*, 765 F.3d at 929). Accordingly, for all the reasons stated above, I conclude that the ALJ properly evaluated Dr. Wolff's opinions.

Accordingly, based on all the foregoing reasons, I conclude that the ALJ properly evaluated the treating and non-treating medical source opinions and I recommend that the District Court affirm this part of the ALJ's decision.

*C.*     *Whether the ALJ's RFC Assessment and Hypothetical Question are Complete*

   *1.*     *Parties' Arguments*

Claimant argues that both the ALJ's RFC assessment and the hypothetical question provided to the VE at the administrative hearing are flawed. (Doc. 15 at 8-10.) Specifically, Claimant argues that the ALJ's RFC assessment and hypothetical question to the VE are incomplete because they do not properly account for all of Claimant's impairments and functional limitations. (*Id.*) Thus, Claimant contends that the ALJ's RFC assessment and hypothetical question are not supported by substantial evidence in the record. (*Id.*) The Commissioner argues substantial evidence supports the ALJ's RFC and hypothetical question. (Doc. 16 at 17.)

   *2.*     *Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

An ALJ is only required to include in the hypothetical the impairments the ALJ found supported by the record. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) ("A

hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.") (quotation omitted). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001).

### 3.    *Analysis*

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for her complaints. (AR at 160-68.) In his decision, the ALJ found that "the residual functional capacity is supported by the objective evidence of record, [Claimant's] treatment providers' observations and the imaging of the cervical spine, along with [Claimant's] conservative pattern of treatment and activities of daily life." (*Id.* at 168.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making his overall disability determination, including determining Claimant's RFC. (*Id.* at 160-66.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Accordingly, I find that Claimant's assertion that the ALJ's RFC assessment is flawed is without merit.

The hypothetical the ALJ posed to the VE did "set forth impairments supported by substantial evidence in the record and accepted as true." *See Goff*, at 421 F.3d at 794. The ALJ asked the VE to:

24

> assume a hypothetical individual of [C]laimant's age and education . . . [and] is capable of performing a full range of light work, but has no ability to climb ropes, ladders or scaffolds, and occasional ability to climb ramps and stairs, and to overhead reach with the right upper extremity . . . [and] this individual has the frequent ability to . . . stoop, crouch and crawl, an ability to follow, understand, and perform more than simple but less than complex instructions and tasks, but should have no more than occasional contact with the general public and coworkers.

(AR at 207.) It is clear that the ALJ's hypothetical question was based on the ALJ's RFC assessment, findings, and conclusions, which are supported by substantial evidence on the record as a whole. Therefore, I conclude that the ALJ's hypothetical question properly included only those impairments which were substantially supported by the record as a whole and captured the concrete consequences of Claimant's deficiencies. *See Goff*, 421 F.3d at 794; *Hunt,* 250 F.3d at 625. Therefore, I find that the ALJ's hypothetical question was sufficient.

Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well

Case 5:21-cv-04027-LTS-MAR   Document 19   Filed 08/17/22   Page 25 of 26

as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 17th day of August, 2022.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa