# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MELISSA W., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | No. C21-4027-LTS-MAR <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Mark A. Roberts, United States Magistrate Judge. *See* Doc. 19. Judge Roberts recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying applications by plaintiff Melissa W. (the Claimant) for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.[1] The Claimant has filed timely objections (Doc. 20). The Commissioner has not filed a response.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

---

[1] In accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, I will refer to a Social Security claimant by his or her first name and last initial due to significant privacy concerns.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge reviews a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. THE R&R

The Claimant applied for DIB and SSI on May 9, 2019, based on spinal fusion, neck pain, cardiovascular disease, COPD, GERD, melanoma screened yearly, bipolar disorder, depression and anxiety. AR 211-12; 233. Judge Roberts considered whether the ALJ committed reversible error by (A) rejecting claimant's subjective allegations of disability and making an inadequate credibility finding; (B) rejecting the opinions of treating medical providers; and (C) making a flawed residual functional capacity (RFC) determination and improperly relying on an incomplete hypothetical question to the vocational expert (VE).

With regard to the Claimant's subjective allegations, Judge Roberts concluded the ALJ appropriately discounted her subjective allegations based on consideration of the *Polaski* factors and inconsistencies in the evidence as a whole. Doc. 19 at 10-13. He explained that the ALJ had thoroughly considered the Claimant's medical history and treatment concerning each of her impairments. While that information supported some limitations, the ALJ found that more severe limitations, as alleged by the Claimant, were not consistent with the evidence as a whole, including objective medical evidence and conservative treatment. *Id.* at 11-12. The ALJ found that the Claimant's daily activities were inconsistent with complaints of disabling symptoms and limitations, noting that the Claimant was able to shop online, manage money, prepare simple meals and independently manage her personal hygiene. *Id.* at 13. Judge Roberts found that

4

substantial evidence supported the ALJ's credibility determination, noting the court cannot reweigh the evidence. He recommends affirming this aspect of the ALJ's decision.

Next, Judge Roberts addressed the treating medical source opinions, noting that the Claimant had not explained why the ALJ erred in evaluating these opinions. Judge Roberts observed that the ALJ considered and addressed the opinion of Dr. Johnson, who performed an impairment rating for purposes of a workers' compensation claim. After the Claimant's January 2016 spine surgery, Dr. Johnson opined she "had nearly complete resolution of numbness and tingling in the right arm, but still had some right arm pain." Doc. 19 at 15 (citing AR 161). Dr. Johnson found a slight deficit in muscle strength on the Claimant's right side. *Id*.

The ALJ observed a significant gap in the Claimant's treatment for her cervical spine or right arm conditions after she met with Dr. Johnson. The Claimant saw her primary care provider approximately eight times from July 2017 through April 2019, but did not make significant, ongoing complaints regarding her neck or upper extremities during those appointments and the primary care provider did not document any abnormalities related to these conditions. The ALJ also noted that the Claimant did not make any complaints related to those conditions after she began seeing a new primary care doctor in October 2019 through March 2020. While she did complain of neck pain in April 2020 to her provider, the provider did not document any abnormalities upon examination.

Judge Roberts found the ALJ adequately accounted for Claimant's neck fusion surgery in formulating the RFC, which limits her to light exertional work, occasional overhead reaching with her right upper extremity and no climbing of ladders, ropes or scaffolds. Judge Roberts determined that while the ALJ did not specifically address the supportability and consistency factors as to Dr. Johnson's opinions, it was clear from the ALJ's discussion that he found Dr. Johnson's opinions supported by and consistent with the record as a whole. As such, any error was harmless and did not necessitate remand.

5

Judge Roberts also considered Dr. Bansal's opinion, which had been provided as part of the Claimant's workers' compensation claim. Judge Roberts observed that like Dr. Johnson's opinion, disability determinations made by nongovernmental agencies for purposes of workers' compensation claims are not binding on the Social Security Administration. *See* 20 C.F.R. §§ 404.1504, 416.904. Dr. Bansal's opinion was added to the record on appeal to the Appeals Council and thus was not before the ALJ. The Appeals Council concluded it did not "show a reasonable probability that it would change the outcome of the decision." AR 2. Dr. Bansal had opined that the Claimant should be limited to lifting no more than 10 pounds and no overhead lifting. Judge Roberts observed this was not supported by Dr. Bansal's own findings and was inconsistent with the record as a whole. Dr. Bansal found the Claimant had full range of motion in her right shoulder and 4/5 strength in her upper right extremity. In addition, no other medical source had limited the Claimant to lifting up to 10 pounds. The ALJ's RFC included a limitation of lifting no more than 20 pounds and occasional overhead reaching with her right arm. Judge Roberts concluded that Dr. Bansal's opinion did not have any bearing on the ALJ's decision and did not necessitate remand.

Judge Roberts next considered the Claimant's argument that Dr. Larson's opinions were consistent with treatment notes from Plains Area Mental Health Center. She noted it was unclear how this consistency supported the Claimant's argument that the ALJ improperly evaluated the medical opinions. Dr. Larson had provided an opinion as part of a psychological consultative examination. The ALJ summarized Dr. Larson's findings and found his opinion was generally persuasive and sufficiently accommodated by a limitation to simple, routine, repetitive tasks with some limitation in social interactions. Judge Roberts concluded the ALJ properly considered and weighed Dr. Larson's opinion.

Finally, Judge Roberts considered findings related to the Claimant's spine surgery and her mental health impairments from Floyd Valley Clinics that the Claimant had referenced in her brief. Again, the Claimant made no specific argument or explanation as to why these findings demonstrated error by the ALJ. The first finding was made by

Dr. Wolff, the Claimant's primary care physician beginning in October 2019. Judge Roberts summarized Dr. Wolff's treatment notes, noting that in April 2020, the Claimant complained of neck pain and numbness and tingling on her right side into her hand and that these things had been bothering her for several years and had not improved after surgery. Dr. Wolff did not document any abnormalities on examination and the ALJ noted the Claimant had not reported such complaints to her primary providers or followed up with orthopedic specialists in approximately three years. Judge Roberts found the ALJ had taken the Claimant's neck fusion surgery into consideration in limiting her to light exertional work, occasional overhead reaching with her right upper extremity and no climbing of ladders, ropes or scaffolds.

Judge Roberts also noted the ALJ had addressed Dr. Wolff's findings related to the Claimant's mental impairments. The ALJ observed that the Claimant's previous primary care physician had not refilled medication due to missed appointments. Dr. Wolff had observed no psychiatric abnormalities and found the Claimant had normal mood and affect. She treated the Claimant with medication. In December 2019, she adjusted the Claimant's medication but found "no evidence of anxiety or depression" and in March and April 2020, she did not document significant psychiatric abnormalities. Judge Roberts found the ALJ sufficiently took the Claimant's mental impairments into consideration in formulating the RFC by limiting the Claimant to simple, routine and repetitive tasks and occasional contact with the general public and coworkers. The ALJ determined that additional limitations were not warranted based on the record including limited abnormalities observed by treating providers, conservative treatment and lack of emergent or psychiatric inpatient treatment during the relevant period.

Judge Roberts concluded the ALJ properly considered and weighed the opinion of Dr. Wolff. While the ALJ did not specifically address supportability and consistency with regard to this opinion, Judge Roberts reasoned it was clear the ALJ found Dr. Wolff's opinion was supported by and consistent with the record and thus, any error as to this aspect of his decision was harmless and did not necessitate remand. He

7

Case 5:21-cv-04027-LTS-MAR   Document 21   Filed 09/15/22   Page 7 of 17

recommends affirming the ALJ's decision with regard to evaluation of the medical opinions.

The Claimant's final argument concerned whether the ALJ's RFC assessment and hypothetical question to the VE were incomplete because, according to the Claimant, they did not properly account for all impairments and functional limitations. Judge Roberts explained that the ALJ addressed and considered the Claimant's medical history and treatment for her complaints and considered the RFC supported by the objective evidence, treatment providers' observations, a conservative pattern of treatment and the Claimant's activities of daily life. The ALJ had also considered and discussed the Claimant's subjective allegations. Judge Roberts concluded that based upon his review of the entire record, the ALJ properly considered the Claimant's medical records, observations of treating physicians and the Claimant's own description of her limitations in formulating the RFC. She found the ALJ's decision was based on a fully and fairly developed record. As to the hypothetical question to the VE, Judge Roberts noted this was clearly based on the ALJ's RFC assessment, which he found was supported by the record as a whole. Therefore, she concluded the hypothetical question to the VE properly included impairments that were substantially supported by the record as a whole and captured the concrete consequences of the Claimant's deficiencies. Judge Roberts recommends affirming this aspect of the ALJ's decision as well.

## *IV. DISCUSSION*

The Claimant makes the following objections to the R&R:

- The ALJ erred in rejecting the opinions of Drs. Johnson, Wolff and Larson and not giving them controlling weight

- The ALJ erred in deciding that claimant's subjective complaints were not credible

- If the first two arguments are correct, then the ALJ also relied on a defective hypothetical question to the VE

8

Doc. 20.[2] Despite making three separate objections, the Claimant combines her argument as to all three. As such, I will address them in a similar fashion.

With regard to her physical limitations, the Claimant argues the ALJ ignored the 10-pound lifting and overhead lifting restrictions imposed by Dr. Bansal. AR 17. Rather, the ALJ found the Claimant could perform light work (lifting up to 20 pounds occasionally) and that she could occasionally (up to one-third of the workday) reach[3] overhead with the right upper extremity. *Id.* at 19. The Claimant also cites Dr. Johnson's opinion that she had a 28 percent impairment as a whole with no permanent restrictions being implemented. *Id.* at 574-75.

With regard to her mental limitations, the Claimant argues the ALJ overlooked that she has difficulties leaving her house and that a 40-hour work week with occasional contact with the public and coworkers is inconsistent with those difficulties. She cites Dr. Larson's opinion, in which he stated that "due to her symptoms of Agoraphobia, she is likely to have problems leaving her home" and her own testimony and reports that she has difficulties leaving her house. *Id.* at 195, 197.

---

[2] The Claimant's objections do not comply with Local Rule 72A or Federal Rule of Civil Procedure 72(b)(2), which require a party who objects to a magistrate judge's R&R to file "specific written objections." Throughout her objections, the Claimant does not explain why the reasoning in the R&R was flawed or identify any factual or legal error by Judge Roberts. Rather, she summarizes parts of the record and, at most, argues the ALJ ignored this evidence. Similar arguments were made to Judge Roberts and addressed in the R&R. The Claimant's attorney has previously been warned that this type of conclusory objection does not comply with the rules and is not entitled to de novo review. *See Rose v. Kijakazi*, No. 20-CV-4062 CJW-MAR, 2022 WL 4009179, at *4-*5 (N.D. Iowa Sept. 2, 2022) (citing prior warnings that date back to 2014 and advising that future conclusory objections will receive clear error, rather than de novo, review). I join in this warning. Future conclusory objections submitted by this attorney that do not comply with Local Rule 72A and Federal Rule of Civil Procedure 72(b)(2) will receive clear error review.

[3] Notably, Dr. Bansal stated the Claimant should avoid "overhead lifting" as opposed to overhead reaching. AR 17.

The Claimant's arguments concerning her physical limitations rely on the opinions of Drs. Bansal and Johnson, both of whom provided opinions in connection with the Claimant's workers' compensation claim.[4]  She does not make any argument as to how the ALJ erred in evaluating these opinions beyond that the ALJ did not adopt the 10-pound lifting and overhead lifting limitations found by Dr. Bansal and ignored her chronic pain.  Doc. 20 at 5.  Of course, Dr. Bansal's opinion was not in the record at the time of the ALJ's decision.  When a claimant submits new evidence and "the Appeals Council considers the new evidence but declines to review the case, [federal courts] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."  *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

Dr. Bansal's February 9, 2017, opinion is the only medical opinion in the record providing a 10-pound lifting restriction.  The state agency medical consultants, whose opinions are dated two and three years after Dr. Bansal's, found that the Claimant could occasionally lift up to 20 pounds, which is consistent with light work as provided in the RFC assessment.  AR 216, 225, 236, 247.  After her work injury (February 17, 2015) and prior to her surgery (January 13, 2016), the Claimant was placed on a 10-pound lifting restriction.  *See id.* at 515, 587, 591.  The ALJ took this into account:

> I further notes [sic] that the claimant was provided various work restrictions by Dr. Cassens in the weeks following her initial work injury (Ex. 1F/34-41).  These limitations generally included a 10-pound lifting limit with limits on repetitive lifting, pushing, pulling, reaching with the right upper extremity, as well as bending, squatting, and twisting (Ex. 1F).  As noted, these restrictions were provided in the weeks after the claimant sustained her initial workplace injury, and there is no indication that these restrictions were intended to be permanent.  As such, these restrictions have little persuasive value.

---

[4] As Judge Roberts noted, an ALJ "is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits."  Doc. 19 at 15 (citing *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006)).

*Id.* at 168. The ALJ's other reasons for not including more restricted limitations were that she had a significant gap in treatment for the neck and upper extremities from approximately January 2017 until April 2020 and otherwise had conservative treatment following surgery. *Id.* at 162. Having reviewed the record, I find the ALJ's RFC assessment with regard to the Claimant's physical limitations is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council.

With regard to the Claimant's mental limitations, she focuses on her difficulties leaving the house. The ALJ considered the medical evidence and the Claimant's subjective complaints related to this limitation. *See id.* at 160 ("She stated that due to her mental impairments, she has difficulty with focus and cannot leave her house."); *Id.* at 165 ("On February 13, 2020, the claimant reported complaints to Dr. Wolff of depression and stated that she did not like leaving the house."). At Step Three, the ALJ found the Claimant was moderately limited in interacting with others based on the following:

> The claimant testified that her mental condition has gotten to the point that she cannot leave her home (Hearing Testimony). Recent treatment notes from her primary care provider note that the claimant reported she does not like to leave the house, but they are not consistent with the extreme allegations claimant testified to at the hearing (see Ex 10F/5, 17). The claimant also testified she has a friend who she talks with on the telephone approximately every day (Hearing Testimony). At times the claimant was observed to be irritable or agitated, which could cause some limitation in her ability to interact appropriately with others (Ex. 4F). However, there is no indication that she has had difficulty interacting with medical staff, and to the contrary, she was observed to be cooperative and pleasant (Ex. 3F; 4F; 6F). The consultative examiner noted the claimant may have problems leaving her home, but she would be able to interact appropriately with supervisors, coworkers, and the public (Ex. 6F). The claimant is therefore moderately limited in interacting with others.

*Id.* at 158. The state agency consultants also found the Claimant had a moderate limitation in interacting with others but that she retained the capacity to work in a setting with limited public contact. *Id.* at 167. In assessing the RFC, the ALJ reasoned that the

11

Case 5:21-cv-04027-LTS-MAR   Document 21   Filed 09/15/22   Page 11 of 17

Claimant's "reports of agitation and irritability due to her mental impairments would result in some difficulty interacting with others appropriately on a constant basis" and limited her to no more than occasional contact with the general public and coworkers. *Id.* at 165-66. I find the ALJ sufficiently considered the evidence that the Claimant has difficulties leaving her house and interacting with the public and that substantial evidence in the record as a whole supports the ALJ's RFC limitation of occasional contact with the general public and co-workers.

The Claimant also references Dr. Larson's opinion, noting that it describes two prior hospitalizations due to nervous breakdowns.[5] *Id.* at 730. Evidence of the overnight hospitalization in 2016 was not before the ALJ but submitted on appeal to the Appeals Council. The Appeals Council found the evidence did not show a reasonable probability that it would change the outcome of the decision. *Id.* at 2. When "the Appeals Council considers the new evidence but declines to review the case, [federal courts] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Nelson*, 966 F.2d at 366. I have reviewed the evidence of the 2016 emergency room visit and overnight hospitalization as well as other evidence submitted on appeal and find that the ALJ's decision remains supported by substantial evidence. While evidence of the 2016 hospitalization contradicts the ALJ's remark that the Claimant had not required emergency mental health treatment or inpatient psychiatric hospitalization during the

---

[5] The record indicates that these hospitalizations took place when the Claimant was 25 and again in 2016, when she was visiting Arizona. AR 19. Records from the 2016 hospitalization were submitted on appeal to the Appeals Council. *See* AR 34-74. These records indicate that the Claimant presented to the emergency room with depression, anxiety and confusion. AR 38. She had been visiting her sister and before boarding her plane to return home, she called her sister complaining of confusion, anxiety and depression and was unable to get on the plane due to her symptoms. *Id.* Her sister reported that the Claimant had been missing her daughter back home and that her mother died 10 months ago. *Id.* at 39. The emergency department ordered a head CT scan and EKG that were unremarkable and also administered medication. AR 41-43. She was discharged the next day. AR 66.

period under review, AR 158, this was only one of several reasons the ALJ found the Claimant had mild and not marked or extreme limitations in the area of adapting or managing oneself at Step Three.

At Step Three, the ALJ considered whether the Claimant's impairments or combination of impairments met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. To do so, the ALJ evaluated the "paragraph B" criteria, which require the mental impairments to result in one extreme limitation or two marked limitations in a broad area of functioning in order to meet a listed impairment. The ALJ found the Claimant had moderate limitations in understanding, remembering or applying information; in interacting with others; and in concentrating, persisting or maintaining pace. AR 157-58. He concluded she had mild limitation in adapting or managing oneself, citing the Claimant's ability to independently manage her personal care tasks and the consultative examiner's findings that while symptoms may be exacerbated by working in a high-stress environment, she would be able to use good judgment and respond appropriately to changes. *Id.* at 158.

The ALJ also mentioned the lack of psychiatric hospitalization. The 2016 emergency room evidence submitted on appeal does not undermine the ALJ's decision at Step Three as it would have to demonstrate an extreme limitation in order to change the ALJ's analysis. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00F(2)(e) (noting an extreme limitation occurs when the individual is not able to function independently, appropriately, or effectively, and on a sustained basis.) Even if the ALJ found she was markedly[6] limited based on this evidence, this would be insufficient to change the outcome because the paragraph B criteria require two marked limitations. *See* 20 C.F.R. §§ 404.1520a; 416.920a. As noted above, the ALJ cited other reasons for concluding the Claimant had mild limitation in adapting and managing oneself. That conclusion

---

[6] Meaning the functioning "is seriously limited." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00F(2)(d).

13

continues to be supported by substantial evidence in the record, even when considering the Claimant's 2016 emergency room visit and overnight hospitalization.

The ALJ also cited the lack of emergent mental health treatment or inpatient psychiatric care in evaluating the Claimant's RFC. *See* AR 166. This was one reason, out of several, for concluding that additional mental limitations, such as the ones alleged by the Claimant, were not consistent with the record as a whole. The ALJ found they were not supported by the objective medical evidence, including the limited abnormalities observed by her primary care providers and by Dr. Larson at the consultative examination. *Id*. He also noted she had conservative mental health treatment during the relevant period that was treated with medication. *Id*. The ALJ observed that while the Claimant purportedly saw a therapist once a week for three to four months, these treatment notes were not part of the record.[7] I find that the ALJ's evaluation of the Claimant's mental limitations for purposes of the RFC remains supported by substantial evidence when considering the 2016 emergency room records. He assigned moderate mental limitations and provided multiple reasons, aside from a lack of emergent mental health treatment, why the record did not support more restrictive limitations. The 2016 emergency room records do not undermine the ALJ's other reasons for assigning moderate mental limitations in the RFC and they do not support more restrictive limitations. The 2016 emergency room records do not warrant remand.

The Claimant also points out that she attended over 30 sessions at Plains Area Mental Health Center since March 11, 2020, which she argues confirms that she was dealing with anxiety and depression. *Id*. at 19, 21, 26, 29. Again, the Claimant makes no specific argument regarding the relevance of this evidence with respect to the R&R. Dr. Larson at Plains Area Mental Health Center conducted the Claimant's consultative

---

[7] The ALJ noted that the record was left open after the hearing for the submission of additional evidence, but the Claimant's representative did not indicate that they were waiting on these additional treatment notes. AR 166.

14

examination on July 22, 2019, and the ALJ found his opinion generally persuasive. *Id.* at 167-68; 730-34. To the extent the Claimant argues that her treatment records from Plains Area Mental Health Center beginning in March 2020 undermine the ALJ's decision, I disagree. Like the 2016 emergency room records, these were submitted on appeal to the Appeals Council. *See id.* at 18-33. The records indicate that in March 2020, the Claimant reported that her anxiety was a 10 on a 1 to 10 scale with 10 being the worst and 1 being no anxiety at all. She reported her depression at a 7 using the same scale. She described symptoms of being jittery and on edge, irritable and agitated, restless and fatigued and difficulties with concentrating or focusing for a long time. She indicated her anxiety worsened when having to deal with the public. *Id.* at 19. The provider made adjustments to her medications. *Id.* at 22. In May 2020, the Claimant's anxiety had decreased to a 6-7 on a 1 to 10 scale, but she exhibited the same symptoms as before. The provider again adjusted her medication. *Id.* at 27. In June 2020, she reported her depression was at an 8 on a scale of 1 to 10. The provider adjusted her medication. *Id.* at 32. While the cover sheet for the records confirms that the Claimant has attended 30 sessions, *id.* at 18, these notes (covering three appointments) are the only treatment notes in the record from Plains Area Mental Health aside from the consultative examination.

The ALJ found that the Claimant's anxiety and depression were severe impairments. *Id.* at 155. The ALJ considered other medical evidence from Drs. Schoenfelder and Wolff regarding these impairments from 2017 and 2018. *Id.* at 164-65. He also considered Dr. Larson's report and Dr. Wolff's treatment notes in 2019 and 2020. *Id.* The ALJ concluded that the medical evidence supported a finding of some moderate mental limitations and as such, limited her RFC to simple, routine and repetitive tasks and instructions and no more than occasional contact with the general public and coworkers. *Id.* at 165-66. The treatment notes from Plains Area Mental Health are consistent with the other medical evidence in the record concerning the Claimant's mental impairments. While they continued working on medication adjustments, they do not

15

reflect a worsening of her condition that would call for additional limitations. The ALJ's consideration of the Claimant's mental impairments continues to be supported by substantial evidence even when considering the additional evidence from Plains Area Mental Health.

Finally, the Claimant describes her subjective allegations related to her mental health, noting that she spends a lot of time in bed, in a jet tub or lying down. *Id.* at 197. Her only activities around the house include watching TV. She will cry out of the blue, four or five times a day, which can last up to 10 minutes. *Id.* at 199. She cannot focus to read more than four to five pages of a book. *Id.* Again, she makes no argument as to how this evidence undermines the ALJ's decision or Judge Roberts' R&R. The ALJ considered these subjective allegations. *See id.* at 160 ("Regarding her mental symptoms, she stated that she experiences depression and anxiety, that she is constantly crying, that she has a hard time getting out of bed, and she self isolates . . . . She alleged issues with memory, completing tasks, concentration, understanding, following instructions, and getting along with others."). The ALJ noted the Claimant testified that she has difficulty with focus and cannot leave her house and that she stays in her bedroom or in the bathtub all the time due to the combination of her physical and mental impairments. *Id.* The ALJ found the record supported moderate limitations based on the Claimant's mental impairments and incorporated those into the RFC. He reasoned that additional limitations alleged by the Claimant were not consistent with the evidence as a whole, including the objective medical evidence, limited abnormalities observed by her primary care providers and Dr. Larson, and conservative mental health treatment with prescribed medication. *Id.* at 166.

The ALJ also remarked that the record did not reflect that the Claimant required emergent mental health treatment or inpatient psychiatric care. As discussed above, the Claimant did report to the emergency room in 2016 with acute anxiety and was admitted overnight. Because this was not in the record before the ALJ, but submitted to the Appeals Council, I have considered whether the ALJ's decision is supported by

substantial evidence when considering this additional evidence. *See Nelson*, 966 F.2d at 366. I find that it is for the reasons discussed by Judge Roberts in the R&R, as the lack of emergent mental health treatment was not the only reason the ALJ provided for concluding that the Claimant's limitations were not as severe as alleged. *See* Doc. 19 at 9-13. Because the Claimant provides no critique of the R&R in her objection beyond disagreeing with its conclusion, I have no further analysis. Because I find no error with regard to the Claimant's first two objections, I need not review the third objection. In any event, I find that the ALJ's RFC assessment and hypothetical question to the VE were supported by substantial evidence in the record as a whole for the reasons provided by Judge Roberts. *See* Doc. 19 at 23-25.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff's objections (Doc. 20) to the Report and Recommendation (Doc. 19) are **overruled**.

2. I **accept** the Report and Recommendation **without modification**. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Roberts' recommendation:

    a. The Commissioner's disability determination is **affirmed**; and

    b. Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 15th day of September, 2022.

_____
Leonard T. Strand, Chief Judge